# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Larry B.,**
**Respondent Below, Petitioner**

**FILED**

April 25, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0471** (Kanawha County 01-D-511)

**Cynthia B.**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Husband Larry B.[1], by counsel Todd W. Reed, appeals the Circuit Court of Kanawha County's order dated April 10, 2013, refusing his appeal of the final order of the Family Court of Kanawha County dated January 4, 2013, which denied his motion to terminate spousal support, and the March 6, 2013, order denying his motion for reconsideration. Respondent Wife Cynthia B., by counsel Lyne Ranson, has filed a response. Petitioner Husband filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Husband and Respondent Wife were divorced pursuant to a final order dated December 26, 2001. Petitioner Husband was ordered to pay spousal support in the amount of $2,200 per month until December 31, 2014, or until such time as Respondent Wife remarried or engaged in a de facto marriage. Petitioner Husband contends that on November 23, 2011, Respondent Wife closed on a house in Teays Valley that she jointly purchased with her boyfriend. The couple completed a joint mortgage loan application and both appear on the deed and the deed of trust. Moreover, Respondent Wife executed a power of attorney allowing the boyfriend to sign for her regarding the

---

[1]"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M,* 177 W.Va. 688, 689 n.l, 356 S.E.2d 181, 182 n.l (1987) (citations omitted).

1

purchase of the home. Petitioner Husband testified that he hired a private investigator who indicated that surveillance showed that Respondent Wife and her boyfriend stayed in either her Charleston home or the Teays Valley home together every night for over a week. In addition, in March and April of 2012, Respondent Wife sent Petitioner Husband a proposal to terminate her spousal support in exchange for a single lump sum payment so that she could "potentially eliminate one household." Respondent Wife contends that she simply loaned her boyfriend $70,000 as a down payment on the home, and that her boyfriend executed a handwritten promissory note, indicating his obligation to repay the loan.

On April 30, 2012, petitioner filed a Petition to Terminate Spousal Support, alleging a de facto marriage between Respondent Wife and her boyfriend. Discovery occurred and both Respondent Wife and her boyfriend were deposed. The final hearings on the petition occurred on October 3, 2012 and December 14, 2012. On January 4, 2013, the family court entered an order denying the Petition to Terminate Spousal Support, finding no de facto marriage existed.

On February 1, 2013, Petitioner Husband filed a Motion for Reconsideration, alleging, among other things, that Respondent Wife and her boyfriend gave misleading testimony during the hearings. The family court denied this motion on March 11, 2013. While this motion was pending, Respondent Wife filed a motion for attorney's fees because no de facto marriage was proven. The court granted Respondent Wife's motion and awarded her attorney's fees without a hearing.

On April 4, 2013, Petitioner Husband appealed to the Circuit Court of Kanawha County. The appeal was refused on April 10, 2013. Petitioner Husband also appealed the award of attorney's fees to the circuit court and moved to stay the case. Respondent Wife replied, and the circuit court granted the parties five days to address the request for attorney's fees. Petitioner Husband sought an extension of this time, and was denied. The circuit court dismissed petitioner's appeal.

We review a circuit court's denial of an appeal from a family court order under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004).

2

Petitioner Husband first argues that the courts below erred in finding that no de facto marriage existed between Respondent Wife and her boyfriend as of April 30, 2012, given West Virginia Code § 48-5-707, which requires application and review of evidentiary factors that aid in the determination of the existence of a de facto marriage. West Virginia Code § 48-5-707 reads, in relevant part, as follows:

(a)(l) In the discretion of the court, an award of spousal support may be reduced or terminated upon specific written findings by the court that since the granting of a divorce and the award of spousal support a de facto marriage has existed between the spousal support payee and another person.

(2)    In determining whether an existing award of spousal support should be reduced or terminated because of an alleged de facto marriage between a payee and another person, the court should elicit the nature and extent of the relationship in question. The court should give consideration, without limitation, to circumstances such as the following in determining the relationship of an ex-spouse to another person:

(A)    The extent to which the ex-spouse and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as "my husband" or "my wife", or otherwise conducting themselves in a manner that evidences a stable marriage-like relationship;

(B)    The period of time that the ex-spouse has resided with another person not related by consanguinity or affinity in a permanent place of abode;

(C)    The duration and circumstances under which the ex-spouse has maintained a continuing conjugal relationship with the other person;

(D)    The extent to which the ex-spouse and the other person have pooled their assets or income or otherwise exhibited financial interdependence;

(E)    The extent to which the ex-spouse or the other person has supported the other, in whole or in part;

(F)    The extent to which the ex-spouse or the other person has performed valuable services for the other;

3

(G)     The extent to which the ex-spouse or the other person has performed valuable services for the other's company or employer;

(H)     Whether the ex-spouse and the other person have worked together to create or enhance anything of value;

(I)     Whether the ex-spouse and the other person have jointly contributed to the purchase of any real or personal property;

(J)     Evidence in support of a claim that the ex-spouse and the other person have an express agreement regarding property sharing or support; or

(K)     Evidence in support of a claim that the ex-spouse and the other person have an implied agreement regarding property sharing or support.

(3) On the issue of whether spousal support should be reduced or terminated under this subsection, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists. If the court finds that the payor has failed to meet burden of proof on the issue, the court may award reasonable attorney's fees to a payee who prevails in an action that sought to reduce or terminate spousal support on the ground that a de facto marriage exist. . . .

This Court has stated that:

> When a court is asked to determine whether a relationship rises to the level of a de facto marriage under W.Va. Code § 48-5-707(a)(2)(2001) (Repl.Vol.2001), the court should use the factors enumerated within that section of the code as a guide for its decision, and should also consider any other evidence presented by the parties that is relevant to establishing the existence or non-existence of a de facto marriage.

Syl. Pt. 3, *Wachter v. Wachter,* 216 W.Va. 489, 607 S.E.2d 818 (2004). Moreover,

> Where the payor of spousal support seeks to have his or her support obligation reduced or terminated based upon the existence of a de facto marriage between the recipient of the spousal support and another, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists.

Syl. Pt. 4, *id.*

In finding no de facto marriage, the family court carefully examined the factors found in West Virginia Code § 48-5-707. Specifically, the court found that Respondent Wife and her boyfriend did not hold themselves out as a married couple; pool their income or assets; perform valuable services for the other; work together to create or enhance anything of value; or, have an express or implied agreement regarding property sharing or support. As to the home purchase, the court found that the evidence showed that Respondent Wife's boyfriend added her name to the mortgage loan to strengthen his credit while his alimony payments to his ex-wife were in effect. Once those payments ceased, he removed her name from the loan and refinanced the home in only his name. Throughout the pendency of this case, Respondent Wife continued to maintain her home in Charleston. Moreover, the court found that the money supplied by Respondent Wife for the purchase of the home was a loan, as evidenced by a promissory note given to Respondent Wife by her boyfriend. Given all of these facts, we find no error in the family court's finding that there was no de facto marriage, and no error in the circuit court's denial of the petition for appeal.

Petitioner Husband next argues that the courts below erred in accessing "after-the-fact" evidence presented after the filing of petitioner's petition to terminate spousal support when applying the enumerated factors found in West Virginia Code § 48-5-707 and concluding that no de facto marriage existed. Petitioner Husband alleges that the court relied on loan documents showing that respondent's boyfriend refinanced the mortgage loan, removing Respondent Wife's name from the documents. Petitioner Husband argues that because these refinancing documents were completed after he filed the petition below, they cannot be considered. However, this Court notes that Petitioner Husband cites no authority for this proposition. Upon our examination of the relevant code provision, we find no error in the lower court's consideration of this evidence, as it was used merely as evidence regarding "[w]hether the ex-spouse and the other person have jointly contributed to the purchase of any real or personal property." W.Va. Code § 48-5-707(a)(2)(I).

Finally, Petitioner Husband argues that the courts below erred by denying his request for reconsideration because Respondent Wife misled the family court as to her "primary" residence because she dramatically curtailed her water usage in the Charleston townhome starting in October 2012 and continuing through January 2013. He also argues that the court erred in awarding attorney's fees to Respondent Wife.

West Virginia Code § 51-2A-10, in part, states:

Any party may file a motion for reconsideration of a temporary or final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2)

5

newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other conduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

Furthermore, we have held that " [a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. Pt. 3, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974). Therefore, " [i]n reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." Syl. Pt. 4, *id.* Indeed, " [a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *id.*

Upon review, we are unable to find that the circuit court abused its discretion in denying petitioner's Rule 60(b) motion. We have explained that "Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit" *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996). The family court found that the water consumption evidence presented by Petitioner Husband did not meet the requirements of Rule 60(b), and the remaining allegations in the motion for reconsideration were previously reviewed by the family court. We agree, and find no abuse of discretion in the denial of the motion for reconsideration.

As to the argument that the court below erred in granting attorney's fees to Respondent Wife, this Court has stated:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. Pt. 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). The family court

found that the petition was "frivolous" and "meritless," and found that Petitioner Husband has "at least 5 [five] times" the income of Respondent Wife based on their submitted paystubs. The family court clearly examined each of the *Banker* factors in this matter, and therefore we find no abuse of discretion in the award of attorney's fees.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 25, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

**Ketchum, Justice, dissenting:**

The evidence in this case clearly demonstrates a de facto marriage.

I, therefore, dissent.